**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**Case No. 20-cv-24299-BLOOM/Otazo-Reyes**

PHILADELPHIA INDEMNITY
INSURANCE COMPANY,

      Plaintiff,

v.

V. ENGINEERING & CONSULTING
CORP., VEC HOLDINGS, LLC, and
FELIX VALDES,

      Defendants.
      _____/

**ORDER ON MOTION FOR SUMMARY JUDGMENT**

**THIS CAUSE** is before the Court upon Plaintiff Philadelphia Indemnity Insurance Company's ("Plaintiff" or "PIIC") Motion for Summary Judgment, ECF No. [23], filed on September 1, 2021.[1] The Motion seeks summary judgment allowing Plaintiff to enforce a general indemnity agreement ("GIA"), ECF No. [21-1] at 9-16, and an interim financing agreement ("IFA"), ECF No. [21-1] at 140-46, (together, the "Agreements"), entered into with Defendants V. Engineering & Consulting Corp., VEC Holdings, LLC, and Felix Valdes (collectively, "Defendants"). The GIA provides that Defendants are to indemnify PIIC for certain losses, and the IFA provides that Defendants are to reimburse PIIC under certain circumstances.

On September 16, 2021, when Defendants had failed to timely respond to the Motion, the Court entered a Paperless Order to Show Cause, ECF No. [25], instructing Defendants to respond to the Motion, and cautioned Defendants that the Court would consider the Motion without the

---

[1] Plaintiff's factual submissions include a Statement of Material Facts as to Which There Is No Genuine Dispute in Support of Motion for Summary Judgment, ECF No. [21] ("Pl.'s SOMF"), and Affidavit of Wendy Clime, ECF No. [21-1].

benefit of a response should they not comply. *See* ECF No. [25]. To date, Defendants have not responded to the Motion. Accordingly, the Court considers the Motion on the merits. For the following reasons, the Motion is granted.

Summary judgment is rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a), (c). At summary judgment, the moving party has the burden of proving the absence of a genuine issue of material fact, and all factual inferences are drawn in favor of the nonmoving party. *See Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

The Court cannot grant a motion for summary judgment by default, even where the nonmoving party fails to respond. *See United States v. 5800 SW 74th Ave.*, 363 F.3d 1099, 1101 (11th Cir. 2004) ("[A] district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed." (alteration added; citation omitted)); *see also* Fed. R. Civ. P. 56 advisory committee's notes to 2010 amendment ("[S]ummary judgment cannot be granted by default even if there is a complete failure to respond to the motion . . . ." (alterations added)). But "if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to [summary judgment]," the Court may grant the motion where the nonmoving party fails to address the moving party's assertions of fact. Fed. R. Civ. P. 56(e)(3) (alteration added). A court ruling on an unopposed motion for summary judgment must "ensure that the motion itself is supported by evidentiary materials" and "indicate that the merits of the motion were addressed." *5800 SW 74th Ave.*, 363 F.3d at 1101-02 (footnote call number and internal quotation marks omitted) (quoting *Dunlap v. Transam. Occidental Life Ins. Co.*, 858 F.2d

629, 632 (11th Cir. 1988) (per curiam)); *see also Hubbard v. Meritage Homes of Fla., Inc.*, 520 F. App'x. 859, 860 (11th Cir. 2013) (citation omitted).

The allegations in the Complaint are straightforward: PIIC issues payment and performance bonds and stands as a surety for construction contractors. ECF No. [1] ¶ 9. Defendant V. Engineering required surety payment and performance bonds in connection with its work. *Id*. ¶ 10. Defendants entered into the GIA with PIIC to induce PIIC to issue payment and performance bonds on V. Engineering's behalf. *Id*. ¶ 11.

After executing the GIA, V. Engineering entered into multiple contracts for which it required payment and performance bonds, specifically, thirteen (13) projects in South Florida with government entities, including Miami-Dade County, the City of Fort Lauderdale, the Town of Jupiter, the City of Miami, Miami-Dade Water and Sewer Department, and Miami-Dade Parks and Recreation Department. *Id*. ¶ 17. PIIC issued the payment and performance bonds. *Id*. ¶ 18; *see also* ECF No. [21-1] at 19-133. Thereafter, PIIC received numerous claims against the bonds from subcontractors and obligees. *Id*. at ¶ 18. PIIC learned that V. Engineering could not complete the bonded projects without financial assistance from PIIC, and therefore PIIC and Defendants entered into the IFA. *Id*. ¶¶ 19-20.

According to PIIC, Defendants have breached the GIA and IFA by failing or refusing to resolve or pay the claims, and to indemnify PIIC. ECF No. [1] ¶¶ 43, 48. As a result, PIIC has suffered damages in the form of payments made to satisfy claims on the Bonded Contracts, attorneys' fees, consultants' fees, costs and other expenses incurred from Defendants' breaches. *Id*. ¶¶ 44, 49.

Plaintiff sets forth the same basic facts in support of its Motion. *See generally* ECF No. [21] ("Pl.'s SOMF"). Pointing to the Agreements, PIIC argues it is entitled to enforce the same

because (1) the Agreements are contracts; (2) PIIC had the right to settle claims under the GIA and did so in good faith; (3) Defendants breached the Agreements; and (4) PIIC has suffered monetary damages. *See* ECF No. [23] at 3-8.

According to the GIA, the terms of which are not disputed, Defendants as indemnitors, agreed to:

> [I]ndemnify and hold harmless Surety from and against any Loss sustained or incurred: (a) by reason of having executed or being requested to execute any and all Bonds; (b) by failure of Indemnitors or Principals to perform or comply with any of the covenants or conditions of this Agreement or any other agreement; and (c) in enforcing any of the covenants or conditions of this Agreement or any other agreement.
>
> [. . .]
>
> [D]eposit immediately upon demand by Surety an amount equal to the greater of: (a) the amount of any reserve established by Surety in its sole discretion to cover any actual or potential liability for any Loss or potential Loss for which indemnitors would be obliged to indemnify Surety hereunder; or (b) the amount of any Loss or potential Loss (including legal, professional, consulting, and expert fees and expenses) in relation to any claim or claims or other liabilities asserted against Surety as a result of issuing any Bond, as determined by the Surety in its sole discretion.
>
> [. . .] and that,
>
> Surety shall have the exclusive right, in its sole discretion, to decide and determine whether any claim, liability, suit or judgment made or brought against Surety on any Bond shall or shall not be paid, compromised, resisted, defended, tried or appealed, on the basis of Surety's belief that it is or could be liable or because the Surety deems it necessary or expedient to do so, and Surety's decision thereon shall be final and binding upon the Indemnitors. Surety shall be entitled to indemnity for any and all disbursements made in good faith related to any such claim, liability, suit, or judgment, which term "good faith" shall be defined to encompass all disbursements made by Surety except those made with deliberate and willful malfeasance.

GIA, ECF No. [21-1] at 10, 12, ¶¶ 3, 4, 9; ECF No. [1], ¶¶ 14-16. Under the GIA, a "Loss" is defined as

> Any and all liability, losses, costs, expenses, and fees of whatever kind or nature that Surety may sustain or incur as a result of executing any Bond, or as a result of the failure of Principal or Indemnitors to perform or comply with this Agreement. Loss includes but is not limited to: (i) sums posted by Surety as a reserve for the payment of potential losses and/or expenses; (ii) all costs and expenses incurred in connection with investigating, paying or litigating any claim, and/or enforcing this Agreement, including but not limited to legal fees and expenses, professional and consulting fees, technical and expert witness fees and expenses; (iii) all accrued and unpaid premiums owing to Surety for the issuance, continuation or renewal of any Bonds or for any policy of insurance issued by Surety for the Principal or Indemnitors; (iv) funds loaned or advanced by Surety to the Principal; and (v) all other amounts payable to Surety according to the terms and conditions of this Agreement or any other agreement between Surety and Principal or Indemnitors.

GIA, ECF No. [21-1] at 10 ¶ 1h.

In exchange for PIIC providing the necessary funding for completion of the bonded projects, the IFA provides in pertinent part that

> The Principal and Indemnitors individually and collectively, hereby acknowledge their execution of the General Indemnity Agreement and reaffirm each and every one of their joint and several obligations and liabilities to the Surety thereunder, including their obligations to reimburse the Surety for all costs and expenses incurred by the Surety at any time related to or arising out of the Bonded Contracts.
>
> [. . .]
>
> If the Surety continues to advance, advances to, loans to, or otherwise funds the Principal (it is expressly acknowledged that prior to the execution of this Agreement, the Surety has already financed and paid certain vendors, and has otherwise incurred losses, costs, and expenses that the Principal and Indemnitors must reimburse the Surety, without offset) at the Principal's and Indemnitors' request: (1) any such Surety advances to, loans to, or funding of the Principal shall be conclusively presumed to be a part of the Surety's losses, notwithstanding the Principal's use or misuse of such advances or loans, for which the Principal and the Indemnitors are obligated to indemnify and reimburse the Surety in accordance with the terms of the General Indemnity Agreement and this Agreement; and (2) any such Surety advances to, loans to, or funding (whether before or after the execution of this Agreement) of the Principal shall also be deemed to be a payment by the Surety under its Bonds and/or a part of the Surety's losses.

ECF No. [21-1] at 141-42, ¶¶ 2, 4.

There is no dispute that Defendants breached the Agreements because "[t]he Indemnitors have refused and/or failed to comply with their collective obligations in accordance with the GIA and [IFA] . . . [and] have failed to indemnify and hold PIIC harmless from losses (incurred and those that are ongoing and anticipated), as required by the GIA" Pl.'s SOMF ¶¶ 25-26. In other words, PIIC has shown that there is no genuine dispute that Defendants breached contracts under Florida law. *See Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009) ("For a breach of contract claim, Florida law requires the plaintiff to plead and establish: (1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach.").[2]

In addition, although Defendants asserted numerous affirmative defenses, *see* ECF No. [10], including failure to mitigate damages (First Affirmative Defense), comparative fault (Second Affirmative Defense), material breach of contract (Third Affirmative Defense), and adequate remedy at law (Fourth Affirmative Defense), Defendants have failed to show that any such defenses are applicable in this case by failing to respond to the Motion. "On a plaintiff's motion for summary judgment, the defendant bears the initial burden of showing that the affirmative defense is applicable." *Off. of Thrift Supervision v. Paul*, 985 F. Supp. 1465, 1470 (S.D. Fla. 1997)

---

[2] Although the Complaint contains claims for specific performance and common law indemnity, Plaintiff does not appear to request summary judgment upon those claims. In addition, specific performance is a remedy for breach, not a stand-alone cause of action. *See e.g., Ocean Commc'ns, Inc. v. Bubeck*, 956 So. 2d 1222, 1225 (Fla. 4th DCA 2007) ("[W]e recognize[ ] three distinct remedies for breach of contract: damages, restitution, and specific performance."); *Castigliano v. O'Connor*, 911 So. 2d 145, 148 (Fla. 3d DCA 2005) ("A decree of specific performance is an equitable remedy not granted as a matter of right or grace but as a matter of sound judicial discretion governed by legal and equitable principles."). In the Motion, Plaintiff specifically seeks only an award of damages; therefore, the Court deems the request for specific performance to be abandoned. Similarly, Plaintiff does not point to any evidence specifically in support of its claim for common law indemnity (Count IV). Furthermore, because the Court finds that PIIC has sufficiently established breaches of the Agreements, the claim for common law indemnity would appear to be duplicative. *See Camp, Dresser & McKee, Inc. v. Paul N. Howard Co.*, 853 So. 2d 1072, 1077 (Fla. 5th DCA 2003) (stating that "common law indemnity is an equitable remedy that arises out of obligations imposed through special relationships, but contractual indemnity is not concerned with 'special relationships' or vicarious, constructive, derivative or technical liability; it is concerned with the express terms of the agreement to indemnify.").

(citing *Blue Cross & Blue Shield v. Weitz,* 913 F.2d 1544, 1552 (11th Cir. 1990)). "Only upon such a showing does the burden shift to [a] plaintiff regarding that affirmative defense." *Id*. (citing *Weitz*, 913 F.2d at 1552 n.13). "The reason is that the defendant bears the burden of proof on his affirmative defenses at trial." *Id*. (citing *Thorsteinsson v. M/V Drangur*, 891 F.2d 1547, 1550-51 (11th Cir.1990)).

With respect to the amount of damages, PIIC asserts that it has incurred net losses of $4,195,859.12 as a result of having issued the bonds, and that those losses are continuing. Pl.'s SOMF ¶ 23. In addition, PIIC asserts that as a result of Defendants' breaches, it has incurred attorneys' and consulting fees, costs, and expenses of $308,693.56, which fees and expenses are continuing. *Id*. ¶ 28. In support of the amounts sought, PIIC refers to an itemization provided as an attachment to the Affidavit of Wendy Clime, ECF No. [21]; however, the Affidavit is missing any such attachment. *See* ECF No. [21-1] at 147 (titled TAB "5," but including no further information). Accordingly, the Court is unwilling to make an award of a specific amount of damages without reviewing the itemization.

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that the Motion, ECF No. **[23]**, is **GRANTED** as to Plaintiff's claims for breach of contract (Counts II and III). Plaintiff may provide a proper itemization of the damages it has incurred for the Court's review, **no later than October 15, 2021**. Thereafter, the Court will enter Judgment against Defendants by separate order.

**DONE AND ORDERED** in Chambers at Miami, Florida, on October 7, 2021.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Case No. 20-cv-24299-BLOOM/Otazo-Reyes

Copies to:

Counsel of record